UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID HENRY CURRY, | No.  2:18-cv-2513 KJN P |
| Plaintiff, | |
| v. | ORDER AND FINDINGS AND RECOMMENDATIONS |
| CALIFORNIA FORENSIC MEDICAL GROUP, et al., | |
| Defendants. | |

I.  Introduction

Plaintiff is a former pretrial detainee,[1] now state prisoner, proceeding pro se and in forma pauperis.  Plaintiff seeks relief pursuant to 42 U.S.C. § 1983.  The motion for summary judgment filed by defendants Thompson and Harris is before the court.[2]  As discussed below, defendants' motion should be granted.

II.  Plaintiff's Allegations

In his verified complaint, plaintiff alleges that defendants Andrea Thompson, R.N. and Dr. Dawn Harris were deliberately indifferent to plaintiff's serious medical needs by refusing to

---

[1]  Plaintiff confirms that he was extradited to the Butte County Jail for criminal proceedings in Butte County.  (ECF No. 30 at 6.)

[2]  The remaining defendants were dismissed pursuant to plaintiff consent.  (ECF Nos. 6, 7.)

1

1   provide an extra mattress and failing to provide adequate pain medication in violation of the

2   Eighth Amendment.  Plaintiff has had several back surgeries, and suffers from scoliosis,

3   degenerative disk disease, arthritis, and was diagnosed as a chronic pain patient in Washington

4   state.  Despite plaintiff's medical history and pain, plaintiff was prescribed non-narcotic NSAID

5   Mobic, which plaintiff contends is less pain relieving than Ibuprofen.  (ECF No. 1 at 3.)

6       Plaintiff seeks proper medications similar to those prescribed before he was taken into

7   custody, a second mattress, and money damages.

8   III.  Request for Judicial Notice

9       Defendants ask the court to take judicial notice of plaintiff's prior civil rights action,

10  Curry v. Balderrama, No. 3:17-cv-05716-BHS-JRC (E.D. Wash.), in which plaintiff alleged

11  deliberate indifference to his serious medical needs while housed in the Coyote Ridge Corrections

12  Center, Washington (hereafter "Coyote Ridge").  Defendants argue that the allegations in

13  Balderrama are nearly identical to plaintiff's allegations in this case, but that the district court

14  granted summary judgment for the defendants on plaintiff's medical deliberate indifference

15  claims.  Id. (judgment entered Feb. 20, 2019).

16      Plaintiff contends, in pertinent part, that his prior case was different because "they made

17  attempts to alleviate my pain.  I was prescribed Mobic, later Depakote, and given a 2nd mattress

18  and a lower bunk," and by the time judgment was entered, plaintiff had been housed at Butte

19  County for over a year and had given up on the prior case.  (ECF No. 30 at 6-7.)

20      A federal court may take judicial notice of adjudicative facts.  Fed. R. Evid. 201(a)-(c).

21  Judicial notice may be taken of the records of this or other courts for the facts that those records

22  represent.  Lee v. City of Los Angeles, 250 F.3d 668, 689-90 (9th Cir. 2001) (court may take

23  judicial notice of dismissal and ground therefore, but not of disputed facts therein).

24      The undersigned declines to take judicial notice of plaintiff's prior civil rights action.

25  (ECF No. 24-3.)  Whether or not plaintiff challenged the medical care he was provided at Coyote

26  Ridge in Washington is not dispositive of whether defendants in this action were deliberately

27  indifferent to plaintiff's serious medical needs while he was housed at the Butte County Jail in

28  California.  While the court in Washington applied the same legal standards this court employs,

2

both the Washington action and this action involve different facts and defendants.  Moreover, in ruling on the motion for summary judgment in the Washington action, the magistrate judge noted that despite having received notice of what is required to oppose summary judgment, plaintiff submitted no evidence and filed no opposition to the motion, instead relying solely on "his conclusory allegations in his complaint."  (ECF No. 24-3 at 4, 10, citing Rand v. Rowland, 154 F.3d 952, 962-63 (9th Cir. 1998).)  Such is not the case here.

Therefore, defendants' request for judicial notice is denied.

IV.  Legal Standard for Summary Judgment

Summary judgment is appropriate when it is demonstrated that the standard set forth in Federal Rule of Civil Procedure 56 is met.  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P. 56(c).)  "Where the nonmoving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case."  Nursing Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P. 56 Advisory Committee Notes to 2010 Amendments (recognizing that "a party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact").  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  Celotex Corp., 477 U.S. at 322.

////

1  "[A] complete failure of proof concerning an essential element of the nonmoving party's case

2  necessarily renders all other facts immaterial."  Id. at 323.

3    Consequently, if the moving party meets its initial responsibility, the burden then shifts to

4  the opposing party to establish that a genuine issue as to any material fact actually exists.  See

5  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to

6  establish the existence of such a factual dispute, the opposing party may not rely upon the

7  allegations or denials of its pleadings, but is required to tender evidence of specific facts in the

8  form of affidavits, and/or admissible discovery material in support of its contention that such a

9  dispute exists.  See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11.  The opposing party

10  must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

11  of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

12  (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

13  1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return

14  a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436

15  (9th Cir. 1987).

16    In the endeavor to establish the existence of a factual dispute, the opposing party need not

17  establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

18  dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

19  trial."  T.W. Elec. Serv., 809 F.2d at 630.  Thus, the "purpose of summary judgment is to 'pierce

20  the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

21  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963

22  amendments).

23    In resolving a summary judgment motion, the court examines the pleadings, depositions,

24  answers to interrogatories, and admissions on file, together with the affidavits, if any.  Fed. R.

25  Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson, 477 U.S. at

26  255.  All reasonable inferences that may be drawn from the facts placed before the court must be

27  drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.  Nevertheless, inferences

28  are not drawn out of the air, and it is the opposing party's obligation to produce a factual

4

1    predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F.

2    Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to

3    demonstrate a genuine issue, the opposing party "must do more than simply show that there is

4    some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could

5    not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for

6    trial.'"  Matsushita, 475 U.S. at 586 (citation omitted).

7           By notice filed December 20, 2019 (ECF No. 24 at 2-3), plaintiff was advised of the

8    requirements for opposing a motion brought pursuant to Rule 56 of the Federal Rules of Civil

9    Procedure.  See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v.

10   Eikenberry, 849 F.2d 409 (9th Cir. 1988).

11   V.   The Civil Rights Act

12          The Civil Rights Act under which this action was filed provides as follows:

13                 Every person who, under color of [state law] . . . subjects, or causes
                   to be subjected, any citizen of the United States . . . to the deprivation
14                 of any rights, privileges, or immunities secured by the Constitution .
                   . . shall be liable to the party injured in an action at law, suit in equity,
15                 or other proper proceeding for redress.

16   42 U.S.C. § 1983.  The statute requires that there be an actual connection or link between the

17   actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  See

18   Monell v. Department of Social Servs., 436 U.S. 658 (1978) ("Congress did not intend § 1983

19   liability to attach where . . . causation [is] absent."); Rizzo v. Goode, 423 U.S. 362 (1976) (no

20   affirmative link between the incidents of police misconduct and the adoption of any plan or policy

21   demonstrating their authorization or approval of such misconduct).  "A person 'subjects' another

22   to the deprivation of a constitutional right, within the meaning of  § 1983, if he does an

23   affirmative act, participates in another's affirmative acts or omits to perform an act which he is

24   legally required to do that causes the deprivation of which complaint is made."  Johnson v. Duffy,

25   588 F.2d 740, 743 (9th Cir. 1978).

26   ////

27   ////

28   ////

1  VI.  <u>Undisputed Facts</u>[3] ("UDF")

2      1.  Plaintiff was housed at the Butte County Jail at all times relevant herein.  (ECF No. 30

3  at 9.)[4]

4      2.  Defendant Thomson, a Registered Nurse, is the administrative Program Director for

5  the contract medical care provider at the Butte County Jail.  Defendant Dr. Dawn Harris was the

6  medical director during plaintiff's incarceration at the Butte County Jail.  (ECF No. 24-4 at 2.)

7      3.  Defendants provided medical services within their respective medical licenses and

8  pursuant to the policies and procedures adopted for use at the Butte County Jail for inmates at the

9  Butte County Jail during the time relevant to this litigation.  (ECF No. 10 at 2.)  Defendants were

10  not employed by the Butte County Jail.  (<u>Id.</u>)

11      4.  At the time plaintiff arrived at the Butte County Jail, plaintiff had a current prescription

12  for Meloxicam, also known as Mobic.  (ECF No. 24-4 at 2 (Thompson Decl.); 24-4 at 15

13  (CURRYMEDS0070).).

14      5.  Mobic was prescribed for plaintiff's pain while he was housed at Coyote Ridge in the

15  State of Washington.  (ECF No. 24-4 at 2; 4-6, 8, 10-14 (CURRYMEDS0009-11, 52, 56, 61, 63,

16  65-66.).)

17      6.  While housed at the Butte County Jail, plaintiff's prescription for Mobic was continued

18  to treat plaintiff's pain.  (<u>Id.</u>)

19      7.  Defendant Thompson, as an RN, was not involved in the decision to prescribe or not

20  prescribe any medication or other care for the plaintiff at the Butte County Jail.  (ECF No. 24-4 at

21  2.)

22      8.  The decision to continue the use of Mobic, also known as Meloxicam, to address

23  plaintiff's pain complaints while he was housed at the Butte County Jail complied with the

24  applicable medical standard of care, and plaintiff's care and treatment at the Butte County Jail

25  _____
[3]  For purposes of summary judgment, the undersigned finds these facts are undisputed.

26
27  [4]  Plaintiff signed his original complaint on September 12, 2018, and this action was filed on
September 19, 2018.  (ECF No. 1.)  The CDCR Public Inmate Locator System reflects plaintiff
was admitted to CDCR custody on September 20, 2019.  https://inmatelocator.cdcr.ca.gov.

28

"did not reflect any indifference by the staff including Dr. Harris to the clinical presentation of the [plaintiff] at that facility".  (ECF No. 24-5 at 2 (Dr. Levin Decl.).)

9.  The decision whether or not to provide an additional mattress for plaintiff "was not a decision medically required."  (ECF No. 24-5 at 2.)  "[I]n terms of long term chronic care for patients with low back pain that to the extent a second mattress creates a softer foundation than the use of a single mattress, . . . the added lack of firm support for the low back may actually aggravate the alignment of the spine and can cause added discomfort."  (ECF No. 24-5 at 3.)

10.  Despite the lack of medical necessity, the record confirms that Dr. Harris reconsidered the denial of a second mattress as an accommodation, and an extra mattress was ordered for plaintiff.  (ECF No. 24-4 at 2-3, 25.)

11.  Defendants do not appear to dispute that plaintiff's chronic lower back pain and other medical conditions constitute serious medical needs.

VII.  Defendants' Motion for Summary Judgment

    A.  The Parties' Positions

        1.  Defendants' Motion

Defendants move for summary judgment on the grounds that plaintiff's medical care at the Butte County Jail met the applicable standard of care, and argue that medical care that is compliant with the standard of care cannot be characterized as reflecting deliberate indifference under the Eighth Amendment, citing Farmer v. Brennan, 511 U.S. 825, 839 (1994).  (ECF No. 24-1 at 6.)  "[T]he standard of constitutional claims is more than 'lack of ordinary care.'"  (ECF No. 24-1 at 6.)  But even if the court finds plaintiff's claims should be evaluated under the Fourteenth Amendment, applying the Gordon test, defendants argue that medical care "compliant with the standard of care cannot 'put the patient at substantial risk of suffering serious harm.'"  (ECF No. 24-1 at 9, quoting Gordon test.)

Because defendants met the standard of care, they "did not fail to take steps to abate a 'risk' hypothetically created by meeting that standard," and providing appropriate care for plaintiff's medical issues "cannot have been the cause of any harm due to the failure to take steps not within the standard of care."  (ECF No. 24-1 at 9.)  Defendants contend that they were not

7

1    objectively deliberately indifferent to any serious medical condition of plaintiff; "non-addictive

2    pain medications had been indicated and provided at Coyote Ridge and the same rational medical

3    response to chronic pain complaints was duplicated at the Butte County Jail."  (ECF No. 24-1 at

4    11.)

5        Defendants provided plaintiff's pertinent medical records, and declarations by defendant

6    Andrea Thompson, R.N., also custodian of records for the inmates provided medical care at the

7    Butte County Jail, and Dr. John Levin, a medical doctor, licensed to practice medicine in

8    California since January 1, 1976, and board certified in Emergency Medicine since 1991.  (ECF

9    Nos. 24-4, 24-5.)  Dr. Levin reviewed plaintiff's Butte County Medical chart, including the

10    medical records appended to defendant Thompson's declaration.  (ECF No. 24-5 at 2.)

11        2.  Plaintiff's Verified Opposition

12        Plaintiff claims that the medications he received at Coyote Ridge were shortly

13    discontinued at Butte County Jail, and he suffered greatly as a result of being denied a second

14    mattress for well over a year.  Despite Dr. Harris "considering" a second mattress on February 26,

15    2019, plaintiff claims he did not receive it until September 2019.  Plaintiff counters that

16    defendants' position that a second mattress was of no benefit is "hogwash!" in light of plaintiff's

17    serious medical issues:  five back surgeries, lower-spine partially removed and fused together,

18    scoliosis, degenerative disk and arthritis.  (ECF No. 30 at 7.)  Plaintiff's "back is always in pain

19    and being forced to live on a steel bed is . . . utter torture," and defendants' attempt to justify not

20    giving plaintiff a second mattress is "not only absurd, it is serious medical negligence."  (Id.)

21        Plaintiff claims that the Butte County medical records clearly show their indifference to

22    plaintiff's serious medical needs by their responses and lack of responses to plaintiff's continued

23    requests.  Plaintiff was a chronic care patient with several debilitating, painful diseases and

24    symptoms, which defendants "continually and deliberately ignored or denied [his] pleas for help."

25    (ECF No. 30 at 9.)  Plaintiff requests the court subpoena his doctors in Sacramento to attend trial

26    or verify plaintiff's medical condition.  (ECF No. 30 at 10.)

27        Specifically, plaintiff disputes that defendants provided the same medications as he was

28    provided in Coyote Ridge.  Rather, plaintiff claims he was not given medications until after

1   defendants were served with this action; defendants sporadically provided medications, mainly

2   for five days, then discontinued.  (ECF No. 30 at 11, 19.)  Plaintiff counters defendant

3   Thompson's claim that she was not involved in the decision to prescribe or not prescribe any

4   medication, stating that Thompson was in charge of responding to medical grievances, yet most

5   of plaintiff's medical grievances went unanswered, leaving him to suffer physical pain, and those

6   grievances that were answered were "vague and unjustified medically."  (ECF No. 30 at 15, citing

7   ECF No. 30 at 15-17, 19-20, 25-27.)  In addition, medical doctors at state prisons DVI and CMF

8   have subsequently verified plaintiff's chronic pain and treated him accordingly.  (ECF No. 30 at

9   11.)  Plaintiff objects that Dr. Levin is not plaintiff's treating doctor and is not a neurosurgeon or

10   chronic pain specialist.

11          Further, while Dr. Levin stated that NSAIDs are the preferred choice for treatment of back

12   pain, plaintiff argues Dr. Levin omitted that "these are prescribed for 'short term, mainly

13   overwork, strains, etc. and muscular pain.'"  (ECF No. 30 at 17.)  Here, plaintiff suffers from

14   spinal ailments and cervical neuritis (a.k.a. severe nerve damage/pain) of his neck, spinal stenosis,

15   scoliosis, severe degenerative disk disease, several ruptured disks and arthritis, which is severely

16   painful, not temporary, but continuous.  Such ailments are not relieved with NSAIDs, which are

17   for temporary conditions, which is why plaintiff was being treated by an advanced pain specialist.

18   (ECF No. 30 at 17.)  Plaintiff provides medical records from Advanced Pain Diagnostic &

19   Solutions where he was treated prior to his incarceration (ECF No. 30 at 20-24; 28-36), as well as

20   other medical records in support of his opposition.

21          Finally, plaintiff argues that even a short delay in providing medical care can result in

22   extreme pain equating to deliberate indifference.  A defendant may be found deliberately

23   indifferent where the medical care provided interferes with the plaintiff's prescribed treatment

24   and "a medical official who [only has] general knowledge about a particular field of medicine

25   may not substitute her judgment for that of a specialist."  (ECF No. 30 at 51-52, citing Jones v.

26   Simek, 193 F.3d 485, 491 (7th Cir. 1999).)

27   ////

28   ////

9

1    <u>Defendants' Reply</u>

2         In reply, defendants contend it is undisputed that plaintiff's prescription for Meloxicam

3    was continued upon his arrival, a long time before he filed this action, despite plaintiff's argument

4    that "these medications were given sporadically and only after plaintiff's requests, demands for

5    treatment, grievances and civil rights lawsuit [was] filed."  (ECF No. 31 at 3, quoting ECF No. 30

6    at 1-2.)  Defendants contend UDF 1 and 2 are undisputed because records show he arrived with

7    the Meloxicam prescription which was continued on intake for thirty days, and extended another

8    thirty days to July 7, 2018.  On July 10, 2018, a different nonparty medical provider continued the

9    Meloxicam prescription, but at 7.5 mg twice a day.  (ECF No. 31 at 4, citing

10   CURRYMEDS00110, 0063).)  On July 11, 2018, in an effort to address plaintiff's complaints,

11   that same nonparty medical provider substituted another NSAID, Ibuprofen (Motrin), 600 mg

12   twice a day for 6 days in place of the Meloxicam (CURRYMEDS0063), then on July 20, 2018,

13   added a second medication, Robaxin, a muscle relaxant, 500 mg twice a day for two days to

14   address plaintiff's complaints (CURRYMEDS0009).  Subsequently, the nonparty medical

15   provider noted that on July 19, 2018, plaintiff wanted a refill of the Ibuprofen, but that he "would

16   like" to renew the Meloxicam; the provider renewed the Meloxicam to start on July 20, 2018, 7.5

17   mg twice a day ("BID") to equal the 15 mg previously prescribed.  (ECF No. 31 at 4, citing

18   CURRYMEDS0009, 0076.)

19        On February 26, 2019, defendant Dr. Harris performed a complete review of plaintiff's

20   course of treatment and pain medication orders by other providers.  (ECF No. 31 at 5.)  Dr. Harris

21   noted that plaintiff, a chronic pain patient, was seen 34 times by the medical unit in less than ten

22   months, and that plaintiff's requested and numerous medical visits resulted in his medications

23   being changed.  (<u>Id.</u>, citing CURRYMEDS0111.)  Dr. Harris wrote, "[r]eview of previous records

24   show [plaintiff] has managed well on higher dose Mobic 15 mg q d [every day] without

25   opiates/gabapentin/or muscle relaxants.  That is what I will restart, and [discontinue] all other

26   anti-inflamm [sic] meds."  (CURRYMEDS0111.)

27        Defendants contend plaintiff submitted no opinion by any competent provider who

28   reviewed the medical records from Butte County and found that the medical care provided failed

10

1  to meet the applicable standard of care.  Because the medical care provided met the standard of

2  care, there is no support for a constitutional violation; rather, plaintiff relies solely on his own

3  opinion that the Butte County care was deficient.  Defendants argue that plaintiff's documents

4  from 2020 concerning the medical care and treatment provided in prison only demonstrate that

5  plaintiff will continue to complain that he is not receiving the medications he prefers.  (ECF No.

6  31 at 6.)

7        Defendants argue that plaintiff's claim that he should have been provided a second

8  mattress fails because he has not refuted Dr. Levin's opinion that it was not medically required.

9        Finally, defendants argue that plaintiff failed to raise a material question of fact to dispute

10  that defendant Thompson neither prescribed nor interfered with the prescription of any

11  medication and that her responses to grievances were an administrative compilation of the entries

12  made by the licensed medical personnel who provided medical care to plaintiff.  Defendant

13  Thompson's role in responding to grievances was not to formulate any nursing diagnoses or

14  personal assessment, but to "locate and provide the information in the patient's file that was

15  responsive to the issues raised by the inmate patient in his grievance."  (ECF No. 31 at 7, citing

16  ECF No. 24-4 at 2.)

17        B.  Legal Standards Governing Medical Claims

18        Deliberate indifference to a serious medical need violates the Eighth Amendment's

19  proscription against cruel and unusual punishment.  See Estelle v. Gamble, 429 U.S. 97, 104

20  (1976); McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds,

21  WMX Techs, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).  A determination of

22  "deliberate indifference" involves an examination of two elements:  the seriousness of the

23  prisoner's medical need and the nature of the defendant's response to that need.  See McGuckin,

24  974 F.2d at 1059.

25        Where the inmate is a pretrial detainee rather than a convicted prisoner, the inmate's rights

26  derive from the Fourteenth Amendment's Due Process Clause rather than the Eighth

27  Amendment's Cruel and Unusual Punishments Clause.  See Gibson v. County of Washoe, 290

28  F.3d 1175, 1187 (9th Cir. 2002) (citing Bell v. Wolfish, 441 U.S. 520, 535 (1979)).  In other

1    words, deliberate indifference to a pretrial detainee's serious medical needs violates the

2    Fourteenth Amendment's Due Process Clause.  Although a deliberate indifference test applies to

3    a pretrial detainee's claim, it is an objective deliberate indifference test, rather than the subjective

4    deliberate indifference test applicable to a prisoner's claim under the Eighth Amendment.  See

5    Gordon v. County of Orange, 888 F.3d 1118, 1122 & n.4 (9th Cir. 2018).  The claim is evaluated

6    under an objective deliberate indifference standard.

7              [T]he elements of a pretrial detainee's medical care claim against an
              individual defendant under the due process clause of the Fourteenth
8              Amendment are:  (i) the defendant made an intentional decision with
              respect to the conditions under which the plaintiff was confined; (ii)
9              those conditions put the plaintiff at substantial risk of suffering
              serious harm; (iii) the defendant did not take reasonable available
10             measures to abate that risk, even though a reasonable official in the
              circumstances would have appreciated the high degree of risk
11             involved -- making the consequences of the defendant's conduct
              obvious; and (iv) by not taking such measures, the defendant caused
12             the plaintiff's injuries.

13

14   Id. at 1125.  As to the third element, the defendant's conduct must be objectively unreasonable --

15   "a test that will necessarily turn[ ] on the facts and circumstances of each particular care."  Id.

16   (citations and internal quotation marks omitted).  Gordon's four-part test requires the plaintiff to

17   prove more than negligence, but less than subjective intent -- something akin to reckless

18   disregard.  Id.

19         C.  Discussion

20         1.  Mattress Claim

21         Plaintiff disagrees with Dr. Levin's opinion that plaintiff did not require a second

22   mattress.  However, plaintiff adduces no competent medical evidence rebutting Dr. Levin's

23   medical opinion that the second mattress was not medically required.  Therefore, plaintiff's claim

24   that he was deprived of a second mattress should be denied.

25         2.  Defendant Thompson

26         Defendant Thompson adduced evidence that as an administrator at the Butte County Jail,

27   her duties did not include any decisions as to what prescription medications were appropriate for

28   an inmate; rather, all orders for prescription medication were within the province of the medical

12

1    director.  Plaintiff adduced no evidence demonstrating otherwise.  Instead, plaintiff generally

2    counters that Thompson was in charge of responding to medical grievances, yet most of

3    plaintiff's medical grievances went unanswered, leaving him to suffer physical pain, and those

4    grievances that were answered were "vague and unjustified medically."  (ECF No. 30 at 15, citing

5    ECF No. 30 at 15-17, 19-20, 25-27.)  However, none of the exhibits plaintiff cites in his

6    opposition include his grievances or defendant Thompson's responses.  Indeed, plaintiff identifies

7    no specific grievance response demonstrating defendant Thompson was deliberately indifferent to

8    plaintiff's serious medical needs.  Defendants adduced evidence that plaintiff was seen in the

9    medical unit 34 times over a ten-month period.  (ECF No. 24-4 at 25.)  Plaintiff adduced no

10   evidence in rebuttal.

11         With his complaint, plaintiff provided three grievance responses by defendant Thompson.

12   (ECF No. 1 at 15, 17, 19.)  But plaintiff fails to demonstrate how her responses were defective,

13   and each response is followed by the review of the medical director defendant Dr. Harris.  (ECF

14   No. 1 at 16, 18, 20.)  Such evidence conforms with defendant Thompson's declaration concerning

15   her role in the grievance process, which plaintiff has also not rebutted.[5]

16         Viewing the evidence in the light most favorable to plaintiff, it is undisputed that

17   defendant Thompson was not responsible for prescribing medication to plaintiff and did not

18   interfere with any medication prescription, thus plaintiff cannot demonstrate the first, second or

19   fourth elements of Gordon.  To the extent her role in the grievance process could be construed as

20   implicating her responsibility in some way, the record reflects that defendant Thompson prepared

21   grievance responses for review by the medical director, thus taking reasonable steps to alert the

22   medical director of plaintiff's concerns so that the medical director, who had authority to

23   prescribe or change plaintiff's medications, could respond.

24   _____

25   [5]  "[I]**Error! Main Document Only.**f there is an ongoing constitutional violation and the appeals
     coordinator had the authority and opportunity to prevent the ongoing violation, a plaintiff may be
26   able to establish liability by alleging that the appeals coordinator knew about an impending
     violation and failed to prevent it.  Herrera v. Hall, 2010 WL 2791586, at * 4 (E.D. Cal. 2010),
     citing see Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (supervisory official liable under
27   Section 1983 if he or she knew of a violation and failed to act to prevent it).  Here, plaintiff fails
     to demonstrate defendant Thompson had authority to change plaintiff's medication prescriptions.

28

1    For all of the above reasons, defendant Thompson is entitled to summary judgment.

2        3.  Dr. Harris

3        Initially, plaintiff challenges defendants' evidence that plaintiff was prescribed pain

4    medication, claiming he was given such pain medication only after plaintiff's requests, demands,

5    grievances, and this action was filed, and then only sporadically.  (ECF No. 30 at 13.)  Plaintiff

6    also claims he was not prescribed the same medication he was prescribed at Coyote Ridge.

7    However, medical records from the Butte County Jail confirm that plaintiff was prescribed Mobic

8    upon arrival at the Butte County Jail.  Indeed, plaintiff received 15 mg. Mobic every day from

9    May 9, 2018, through July 10, 2018.  (ECF No. 24-4 at 12, 13, 14.)

10        Moreover, a different nonparty medical provider discontinued plaintiff's prescription to

11    Mobic on July 11, 2018, and added other medications in an effort to address plaintiff's

12    complaints.  (ECF No. 24-4 at 4.)  Plaintiff was prescribed 600 mg tablets of Ibuprofen (Motrin)

13    twice a day from July 11, 2018, through July 17, 2018.  (ECF No. 24-4 at 12.)  However, on July

14    20, 2018, plaintiff was again prescribed Mobic, 7.5 mg twice a day for thirty days, as well as 500

15    mg of Robaxin twice a day for three days.  (ECF No. 24-4 at 4, 17.)  On July 25, 2018, the

16    Robaxin prescription was extended for three additional days.  (ECF No. 24-4 at 18.)

17        On July 24, 2018, the date of the response to plaintiff's grievance 18-0826, which

18    included the medical director's response, plaintiff was receiving Mobic as well as Robaxin.  (ECF

19    No. 1 at 20.)  On September 7, 2018, plaintiff was prescribed 15 mg Mobic every day, which he

20    received through October 6, 2018.  (ECF No. 24-4 at 4, 11.)

21        When Dr. Harris reviewed plaintiff's medical records on February 26, 2019, she noted

22    that plaintiff's medications kept being changed in response to plaintiff's requested medical visits.

23    (ECF No. 24-4 at 25.)  Plaintiff points to no evidence to the contrary.  Thus, while plaintiff

24    characterizes the prescription of medication as sporadic, the record reflects that the changes were

25    based on nonparty medical providers' efforts to find medications that would work for plaintiff.

26    Thus, plaintiff fails to demonstrate that defendant Dr. Harris caused plaintiff's alleged injuries

27    when plaintiff was not receiving Mobic at the Butte County Jail.  Moreover, evidence that such

28    nonparty medical caregivers disagreed as what medications to prescribe is also insufficient, by

14

1   itself, to establish deliberate indifference.  See Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir.

2   1996) (prisoner "must show that the course of treatment the doctors chose was medically

3   unacceptable under the circumstances.")

4   　　　In addition, plaintiff adduced no evidence demonstrating Dr. Harris was responsible for

5   providing medical care to plaintiff between October 7, 2018, and February 25, 2019.[6]  Following

6   her February 26, 2019 extensive review of plaintiff's medical records, including the Washington

7   records and records plaintiff had in his possession from U.C. Davis, Dr. Harris reinstated

8   plaintiff's prescription to 15 mg Mobic once a day in an effort to provide continuity of care from

9   when plaintiff was housed at Coyote Ridge.  In addition, Dr. Harris added an order that plaintiff's

10  medications were not to be changed without her approval.  (Id.)  Such actions by Dr. Harris are

11  objectively reasonable and do not constitute deliberate indifference.

12  　　　While plaintiff obviously disagrees with the medications prescribed to treat his pain while

13  he was housed at the Butte County Jail, his disagreement, without more, is insufficient to

14  demonstrate that defendant Dr. Harris acted with deliberate indifference.  A showing of nothing

15  more than a difference of medical opinion as to the need to pursue one course of treatment over

16  another is insufficient, as a matter of law, to establish deliberate indifference.  Toguchi v. Chung,

17  391 F.3d 1051, 1058 (9th Cir. 2004); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).

18  　　　Although plaintiff provided medical records from treatment he received before he was

19  incarcerated, as well as from treatment subsequently received since he was transferred to state

20  prison, such records do not constitute an expert medical opinion as to the medical care he

21  received at the Butte County Jail.  Plaintiff provided no declaration from any of the doctors

22  referenced in the medical records he provided.

23  　　　Therefore, the undersigned finds that, viewing the evidence in the light most favorable to

24  plaintiff, there is no genuine dispute as to any material fact relating to plaintiff's claim of

25  _____

26  [6]  On January 8, 2019, plaintiff was prescribed 500 mg Acetaminophen (Tylenol) twice a day; he
    received one tablet on January 8, 2019, two tablets per day thereafter until February 7, 2019,

27  when he received the last tablet under this prescription.  (ECF No. 24-4 at 10 (nonparty medical
    provider).)  On February 22, 2019, plaintiff was prescribed 250 mg Naproxin twice a day for ten

28  days.  ECF No. 24-4 at 6, 9 (nonparty medical provider).)

1    deliberate indifference against defendant Dr. Harris under the <u>Gordon</u> factors.  The record shows

2    that defendant Dr. Harris made an intentional decision to prescribe Mobic to plaintiff in the same

3    strength it was prescribed at Coyote Ridge, satisfying the first element of <u>Gordon</u>.  The evidence

4    does not establish that doing so put plaintiff at a substantial risk of suffering serious harm.  Any

5    failure to provide plaintiff with stronger pain medications, such as narcotics, does not establish

6    that defendant Dr. Harris put plaintiff at substantial risk of harm by re-prescribing Mobic, because

7    plaintiff was being prescribed Mobic at Coyote Ridge, and Dr. Levin opined that Mobic, an

8    NSAID, was an appropriate medication under the circumstances.  The record demonstrates that

9    Dr. Harris took the additional step of ordering that plaintiff's medications not be changed without

10   Dr. Harris' approval, thus ensuring that the nonparty medical providers would not again remove

11   Mobic from plaintiff's medication regimen.  Because Dr. Harris' actions on February 26, 2020

12   were reasonable, plaintiff cannot establish the last <u>Gordon</u> factor, causation.  888 F.3d at 1125.

13          Finally, defendants provided the expert opinion of their medical expert, Dr. Levin.  (ECF

14   No. 24-5.  Dr. Levin attests that he has practiced and trained in the care, treatment and clinical

15   diagnosis of patients with musculo-skeletal sprains and strains, including but not limited to

16   chronic low back and spinal complaints of pain, and the medications and supportive care

17   appropriate to address the clinical presentation of the signs of both acute and chronic pain and

18   discomfort reported by such patients.  (ECF No. 24-5 at 1-2.)  After reviewing plaintiff's relevant

19   medical records, Dr. Levin expresses the opinion that plaintiff was appropriately prescribed

20   Meloxicam, a non-steroidal pain medication (referred to as an NSAID), and in continuity of his

21   care with the pain medication plaintiff was receiving in Washington.  Dr. Levin states that "an

22   NSAID is the drug of choice for the treatment of chronic back pain; conversely, the use of an

23   opiate pain medication is not medically indicated for such chronic cases since opiate medications

24   include the very real risk of creating addiction in the patient."  (ECF No. 24-5 at 2.)  "[A]ll . . .

25   providers in this country are aware of the present and devastating opioid crisis and the detrimental

26   effects created by the over-use and abuse of such drugs."  (<u>Id.</u>)  Dr. Levin further opined that "the

27   care and treatment received by [plaintiff] at the Butte County jail . . . complied with the

28   applicable standard of care and did not reflect any indifference by the staff including Dr. Harris to

16

1    the clinical presentation at that facility."  (ECF No. 24-5 at 3.)  Dr. Levin's opinion is further

2    evidence that defendant Harris' actions were not objectively unreasonable.

3         The undersigned finds that defendant Dr. Harris' actions in connection with plaintiff's

4    serious medical needs were objectively reasonable.  See Gordon, 888 F.3d at 1125.

5         4.  Conclusion

6         Defendants have established the absence of a genuine issue of material fact with respect to

7    all of the deliberate indifference claims against them.  See Celotex Corp., 477 U.S. at 323.

8    Plaintiff has not identified any competent evidence that precludes summary judgment.  Therefore,

9    defendants are entitled to summary judgment.

10   VIII.  Injunctive Relief

11        In his complaint, plaintiff sought proper medications and a second mattress.  Because

12   plaintiff has now been transferred to state custody and is no longer housed in the Butte County

13   Jail, such claims are moot and should be dismissed.

14   IX.  Conclusion

15        Accordingly, IT IS HEREBY ORDERED that:

16        1.  Defendants' request for judicial notice (ECF No. 24-3) is denied; and

17        2.  The Clerk of the Court is directed to assign a district judge to this case.

18        Further, IT IS RECOMMENDED that the motion for summary judgment (ECF No. 24) be

19   granted, as follows:

20        1.  Defendants Thompson and Harris be granted summary judgment;

21        2.  Plaintiff's request for injunctive relief (ECF No. 1 at 6) be dismissed as moot, without

22   prejudice; and

23        3.  Judgment in favor defendants be entered, and this action be terminated.

24        These findings and recommendations are submitted to the United States District Judge

25   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **thirty** days after

26   being served with these findings and recommendations, any party may file written objections with

27   the court and serve a copy on all parties.  Such a document should be captioned "Objections to

28   Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be

17

1   filed and served within **twenty-one** days after service of the objections.  The parties are advised

2   that failure to file objections within the specified time may waive the right to appeal the District

3   Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

4   Dated:  August 4, 2020

5

6                                               KENDALL J. NEWMAN
                                                UNITED STATES MAGISTRATE JUDGE

7   /curr2513.msj

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28